IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Robert Peoples, #270600 | ) | |
| | ) | Civil Action No. 8:08-251-CMC-BHH |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| v. | ) | |
| | ) | |
| Sgt. Leon Davis, et.al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The plaintiff, a prisoner proceeding *pro se*, brought this action alleging constitutional violations pursuant to 42 U.S.C. § 1983. The matter is before the Court on the defendants' motion for summary judgment. [Doc. 32.]

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff brought this action on January 29, 2008, seeking damages for alleged civil rights violations. The plaintiff contends that he was aggressively "taken down" and placed in a "black box" restraint behind his back, which caused him constitutionally prohibited levels of pain and injury in violation of his 8th and 14th Amendment rights. The plaintiff also claims that during the same incident, handcuffs were placed on his wrists too tightly. He also may have intended to claim that the

defendants were deliberately indifferent to injuries allegedly suffered as a result of these described incidents.

On June 24, 2008, the defendants filed a motion for summary judgment. On June 25, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On August 22, 2008, the plaintiff filed a response opposing the defendants' summary judgment motion. The plaintiff currently has leave through January 27, 2009 to file a supplement to that response, regarding policies of the South Carolina Department of Corrections ("SCDC"). As explained more fully herein, evidence of such policies would not change this Court's recommendation.

The relevant facts of this case are considered in the context of the Court's analysis below.

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is

2

entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

### I.    Excessive Force Claim

The plaintiff makes an Eighth Amendment claim[1] based upon two sets of facts: (1) that he was "taken down" on May 8, 2007 when the defendant officers attempted to cuff and restrain him for transport to court and (2) that he was injured by having been restrained with a "black box"[2] and handcuffs applied too tightly.

To establish an Eighth Amendment claim for cruel and unusual punishment, the plaintiff must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The subjective component requires the inmate to show that the officers applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and

---

[1]  The Court does not interpret the plaintiff's Complaint, as the defendant would, to include a due process claim regarding a failure to consider his various grievances.  But even if he has pled such a claim and even assuming the defendants did not timely respond to the plaintiff's grievances, such a failure is not sufficient to hold an official liable in a civil rights action. The law is well-settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-138 (1977).  Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983 ); s*ee also Doans v. Rice*, 1987 WL 38813, at *1 (4th Cir. 1987) (unpublished).  Thus, even if the defendants failed to timely respond to, or process the plaintiff's grievances, the plaintiff has not stated a constitutional claim.

[2]  "A 'black box' is a hard plastic box placed over the lock apparatus that runs between the prisoner's handcuffs which make it more difficult for a prisoner to tamper with his handcuffs.  A chain runs through the box and encircles the prisoner's waist. The chain is tightened and then locked in back so that the prisoner's hands, restrained by handcuffs and the black box, are pulled against his stomach." *Weber v. Gathers*, 2006 WL 2796383, at *4 n.3 (D.S.C. 2006)(unpublished).

sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The objective component requires the inmate to prove that the use of force was more than *de minimis* or, in the alternative, that it was repugnant to the conscience of mankind. *Id*. at 9-10. *De minimis* injury can be conclusive evidence that the force used was also *de minimis* and, therefore, not violative of constitutional protections. *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir.1994).

On this record, the Court finds evidence that the plaintiff has created issues of fact as to the subjective element of his claim concerning both the take down and the restraints but has created issues of fact as to the objective element only concerning the restraints.

The plaintiff contends that during transport on May 7, 2007, for approximately 7 hours, he was restrained from behind with the black box. (Pl. Aff. ¶ 1.) The plaintiff alleges that as a result of the restraint, he suffered swelling in his arm, pain, and diminished range of motion. *Id*. ¶ 4. It is undisputed that the plaintiff was seen for the alleged swelling, given an arm sling, and instructed to take ibuprofen for the pain. Id.; (Powell Aff., Ex. A.)

The plaintiff does not make any claim that the 7 hour restraint or the treatment by the nurse was violative of any of his constitutional rights, in this case. Although, he has filed a companion case regarding the events of May 7. *See Peoples v. Davis*, 8:08-252-CMC-BHH. The plaintiff's claims, in this case, relate exclusively to the events which followed.

5

Namely, the plaintiff complains that on the following day, May 8, 2007, the defendants again used the black box on him behind his back, notwithstanding his injuries from the preceding day.  The plaintiff was being transported for a court appearance related to pending motions in a state court case, including a motion to enjoin the SCDC from transporting the plaintiff in the black box restraint behind his back.   The plaintiff claims that before transportation on May 8, he was examined by Joseph Powell, a registered nurse for the SCDC.  *Id*. ¶ 9. There is no dispute between the parties that Powell removed the sling, examined the plaintiff, and concluded that there was nothing wrong with the plaintiff and that he could be restrained from behind with the black box. *See id.*  Specifically, Powell has stated that the examination was completely unremarkable.  (Powell Aff. ¶ 3.)  He found that the plaintiff had full range of motion and that there was no medical reason why the plaintiff could not be restrained from behind. *Id*.

The only dispute is whether or not the plaintiff was complaining about the pain. The plaintiff claims he was yelling and screaming (Pl. Aff. ¶ 9) and Powell contends that he was not screaming in pain or agony but was discussing the matter in a conversational tone (Powell Aff. ¶ 3).

The plaintiff contends that sometime after his examination the defendant officers began to put him into the restraints.  (Pl. Aff. ¶ 10.)  He alleges that he told them that he would be unable to tolerate the restraints in his condition but that, in spite of his objection, the officers grabbed his left arm forcefully.  *Id*.  At that point, the plaintiff

6

admits to commanding the officers to "let [him] go." *Id.* The plaintiff claims that in response, the defendant officers aggressively took him to the ground to apply the full body restraints and the black box. *Id.* The plaintiff alleges that one of the defendant officers intentionally bent his thumb back toward his wrist. *Id.* The plaintiff also admits that during the altercation he kept "moving," but contends that this was a natural human reaction to the pain he was feeling in his arm and from the force applied to his thumb. *Id.* ¶ 11. The plaintiff further contends that the handcuffs were then fixed too tightly on his wrists and that he was not permitted to have any staff member check the propriety of their tightness. *Id.* ¶ 12.

The plaintiff alleges that in the van, he was secured by a seat belt which caused his body weight to press against his wrist inflicting unnecessary and wanton infliction of pain. *Id.* ¶ 14.

### A.    Subjective Component of Take Down Claim

To prove the subjective component of his claim, the plaintiff must show that an officer acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The state of mind required in excessive force claims is "wantonness in the infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 322 (1986). "Put differently, the core judicial inquiry regarding the subjective component of an excessive force claim is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.2008) (internal quotations and citation omitted).

7

In *Whitley*, the Supreme Court set forth four non-exclusive factors to assist courts in assessing whether an officer has acted with "wantonness": (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response." *Whitley*, 475 U.S. at 321 (internal quotations omitted) (applying these factors in a prison riot case); *see Hudson*, 503 U.S. at 7 (extending the Whitley standard "to all allegations of excessive force").

To the Court, the viability of the plaintiff's entire claim, regarding both the take down and the use of the black box restraint, turns on the factual dispute over nurse Powell's examination of him immediately prior to these events. As described, Powell has represented that it was his opinion that the plaintiff had no injuries and that "there was no medical reason that the officers could not transport Peoples . . . using the black box to handcuff his hands behind him." (Powell Aff. ¶ 3.) Powell claims that when he examined the plaintiff, he had "a full range of motion in both arms and did not appear to be in any distress." *Id*. Powell further recounts that the plaintiff "was not screaming in pain or agony, but was discussing the matter in a conversational tone with me. *Id*.

In substantial contrast to Powell's version of the events, the plaintiff contends that, as soon as Powell removed his arm from the sling, he "started expressing the pain and injuries" allegedly suffered on the previous day's trip. (Pl. Aff. ¶ 9.) More specifically, the plaintiff alleges that as Powell began moving his arm, the plaintiff started "yelling and

8

screaming in pain and asking him to stop." *Id.*  The plaintiff further states that when Powell indicated to the defendant officers that nothing was wrong with the plaintiff, the plaintiff "started telling him that he [sic] clearly see the swelling on my arm and that he was only a registered nurse and couldn't determine the nature of my injured shoulder." *Id*.

The credibility of the two accounts is material.  If Powell's account is accurate, then the defendant officers were justified in their good-faith reliance on his assessment that restraining the plaintiff with the black box behind him was not a problem. Powell's assessment would also justify, ultimately, the defendant officers' need to physically take the plaintiff to the ground to apply the restraints.  The defendant officers would have been entitled to use force against the plaintiff who, by his own admission, was refusing to cooperate, so long as the initial instructions were justified.  *See Hudson*, 503 U.S. at 6; *Whitley*, 475 U.S. at 320-21.

As stated, the plaintiff admits that he told the defendant officers that he could not be placed into the restraints and then stated, "let me go." (Pl. Aff. ¶ 9.)  Accordingly, at the time the force was exerted, the plaintiff was resisting instruction.  When force is applied to "maintain or restore discipline" then substantial deference is given to an officer's decision to use a particular degree of force.  *Whitley*, 475 U.S. at 320-21. Because the undisputed evidence indicates that the defendant officers took the plaintiff down to maintain order over the plaintiff, no reasonable jury could find in his favor *so long as the order he was resisting was, in the first instance, justified and not intended to*

9

*do him malice*.  The Court believes that Powell's version of the events, if believed by a jury, would so justify the restraint orders given  – that the plaintiff should cooperate with application of the black box restraints.  At the very least, it seems that the defendant officers would enjoy qualified immunity for actions reasonably believed to be nonviolative of any established right, based on Powell's indication that nothing was physically wrong with the plaintiff.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Conversely, if the plaintiff's version of the incident were credited, then a reasonable jury would be justified in concluding that Powell approved, and the defendant officers applied, the black box restraints in spite of evidence that the plaintiff was in agonizing pain in that exact moment.  On the facts of this case, plaintiff's account, therefore, would eliminate the protection of a qualified immunity, to the extent it was believed.  *See Harlow*, 457 U.S. at 818.  At all times relevant to this case, the defendants would have been fully aware that the plaintiff's right to be free from force employed "maliciously and sadistically for the very purpose of causing harm" was clearly established.  *See Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).

While circumstances can be imagined whereby the plaintiff would be in considerable pain but the actions of an officer would still be warranted, it does not seem that any such circumstances are present here or at least that a reasonable jury could conclude that they were absent.  The plaintiff was not posing any immediate danger to himself or others.  His arm was visibly in a sling.  It was known by Powell and the officers that the plaintiff had been seen the night before for injuries based on the black box

restraint.  Neither Powell nor the defendant officers reviewed the circumstances of the previous nights' examination or diagnosis to help inform their decision to restrain him with the black box.  It is not fully clear the extent of Powell's authority to make the diagnosis of the plaintiff.  Thus, if it is also believed that the plaintiff was demonstrably reactive to attempts to examine his harm and restrain him, to the point of screaming and yelling in pain, it could be concluded that the defendants proceeded with application of the restraints with the wanton and sadistic purpose of causing pain and harm and in the absence of any real justification.[3]

It is not the view of the evidence this Court holds, personally, and frankly the whole matter is a close call.  But it is a *possible* interpretation of the facts that a reasonable jury would be justified in making.  The Court may not foreclose the possibility that others may so reasonably conclude, when a genuine issue as to what exactly happened during the examination persists.

Applying the *Whitley* factors, it appears that the plaintiff posed no immediate threat to himself or others.  The relationship between the force used, both in the take down and the restraint itself, could be viewed as disproportionate to the generalized need for security in his transportation, if the plaintiff is found to have been credibly in agonizing pain.   And, there is no evidence that the defendant officers sought to temper

---

[3]  The defendants have submitted evidence that the plaintiff attempts to tamper with his restraints and participates in other problematic behavior if he is not restrained from behind.  (See generally Randall, Davis Affs.)  While these are legitimate considerations, the plaintiff has submitted evidence that he is not always transported in this manner (Pl. Aff. ¶ 24; Pl. Exs. 35-37) and the defendants have not put forward any evidence that such restraints were so absolutely necessary on the day in question that they should have been applied even in the face of injurious pain and harm to the plaintiff.

the force used.  They did not make a second request of the plaintiff to cooperate with the restraint before taking him to the ground and they did not offer to use the back box in front of the plaintiff as opposed to behind him, in order to alleviate the pain.

If the defendants were *unjustified* in concluding he was not in pain, then their use of force could very well be viewed as malicious or sadistic.

### B.     Objective Component

As to the objective component of the test, an injury is "sufficiently serious" if it rises above the level of *de minimis* harm. *Hudson*, 503 U.S. at 9-10.  *De minimis* injury can be conclusive evidence that the force used was also de minimis and, therefore, not violative of constitutional protections.  *See Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir.1994).  "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973).  *See also Williams,* 77 F.3d at 761 (holding prison officials are entitled to use appropriate force to quell prison disturbances, and acting under pressure without the luxury of a second chance, an inmate must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm).   While it is true that there may be "highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain," this case does not involve circumstances where either the force used was "repugnant to the conscience

of mankind," or the pain, described, can properly be said to constitute more than *de minimis* injury.  *Norman*, 25 F.3d at 1264.

It appears that issues of fact remain as to whether the plaintiff can establish the objective element of his claim as it relates to the use of the restraints but not as to the take down.

Concerning the take down, the plaintiff claims that he was taken aggressively to the ground and that his thumb was bent back in the process.  He has produced neither evidence nor argument that as result he suffered any bruising, swelling, bleeding, pulled or torn muscles or ligaments, or any broken bones.  In his Complaint the plaintiff did summarily allege that due to the take down he suffered "a swollen thumb."  (Compl. at 5.)  The Court originally believed that this conclusory allegation was not replicated in either the plaintiff's extensive response to summary judgment nor his affidavit in support.  But upon further review, the plaintiff appears to have attached additional purportedly verified statements to the back of his affidavit which reiterate this allegation.  (Pl. Mem. Opp. Summ. J. at 72.)  Notwithstanding, this sort of conclusory allegation, that the thumb was swollen, is insufficient to preclude a grant of summary judgment, without more.  *See Ross*, 759 F.2d at 365.  There is no medical evidence of a swollen thumb, and the Court disagrees that the alleged pain suffered during the take down, as described, is actionable in either duration or magnitude.  *See id.*  He hardly alleges any.  Moreover, the alleged actions related to the take down, even viewed in a light most favorable to the plaintiff, could not be characterized as "repugnant to the conscience of mankind,"

13

thereby relieving the need for more than a *de minimis* showing of injury.   *Norman*, 25 F.3d at 1264.

As to the application of the restraints themselves, however, the Court is conflicted, as it always is, regarding such allegations and the purportedly related injuries. The undersigned has particular sensitivities to the burdens of prison life and has no doubt that the restraints described by the plaintiff caused all manner of discomfort and even pain.  In some respects, such is their very nature.  The existence of merely "harsh" or "restrictive" prison conditions, however, does not implicate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

The plaintiff alleges that, as a result of the black box and the tight handcuffs, he suffered "unbearable pain . . . deep cuts and bruises on both wrists, damage nerves in both wrists, the loss of feeling in both arms, left and right shoulder sprains . . . ."  (Pl. Mem. Opp. Summ. J. at 72.)  In addition, he has produced evidence that a Dr. Babb found tender joints, soft tissue injuries, and nerve damage as a result of the restraints. (Pl. Ex. 39.)  While there is not enough in the record to precisely measure the seriousness of these injuries, the evidence certainly creates an issue of fact as to whether the plaintiff's injury was more than *de minimis*.

As additional evidence of injury, the plaintiff also alleges that, upon arriving at his court appearance on the day in question, he was "moaning in pain and crying in tears" as a result of the restraints.  (See Pl.  Aff. ¶ 15.)  While not entered until over a month later, State court judge, Roger Young, did, in fact, grant the plaintiff's motion, ordering

14

"that Plaintiff be allowed to travel with his hands cuffed in front of him, but only if safety considerations permit." (Pl. Ex. 15.)  Judge Young stated further, "if Plaintiff conducts himself during transport in a manner that gives the officers charged with his transport a reasonable concern for safety and/or security, Plaintiff shall be restrained in whatever manner the circumstances require in the officers' discretion." *Id*. It should be noted, however, that the order made no finding as to the effect of the restraints on the plaintiff. It made no finding as to the plaintiff's physical condition.  It made no finding as to the defendant officers' behavior on the day in question.  And, it made no finding as to the plaintiff's conduct in court.  While the court granted the plaintiff's request, the order was qualified, and nowhere indicated that the ruling was based on any particular wrong or injury suffered by the plaintiff.  Ultimately, it preserved for the SCDC the same discretion it always enjoys to employ restraints in a manner it deems necessary to provide for safety and security.

The plaintiff has not argued that the black box restraint itself, by design, is torturous or inflicts wanton pain.  In other words, applied properly, and upon an inmate in normal physical health, the restraint is not alleged to inflict invidious and constitutionally prohibited pain or injury, even when used behind the inmate's back (although he essentially argues as much in his companion case, Peoples v. Davis, 8:08-cv-251).  The plaintiff contends, simply, that, in light of his allegedly preexisting arm injury, use of the restraint was cruel and unusual punishment.  And, as discussed, there is evidence from which a reasonable jury might conclude that the defendants knew the restraints would

15

exacerbate the plaintiff's allegedly injured arms in unjustifiable ways but applied them any way

Accordingly, even in the absence of any particular injury, a reasonable jury might still conclude that "the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury."   *Norman*, 25 F.3d at 1263 n.4.

From the evidence presented, it is appropriate to conclude that issues of fact remain as to the subjective element of the plaintiff's claim as to both the take down and restraint allegations.  The Court also agrees that the plaintiff has created issues of fact as to the objective element of his claim relating to the restraints.  The Court declines to recommend, however, that he can so satisfy the objective element as to the take down. The plaintiff has produced no evidence that he suffered anything more than *de minimis* injuries from that use of force and that portion of his claim should fail.

## II.    **Deliberate Indifference to Medical Needs Claim**

The Court also declines to interpret the plaintiff as having ever attempted to seriously advance a claim for deliberate indifference to a serious medical need.  Out of an abundance of caution, however, and because the Complaint lists it expressly (Compl. at 7), the Court makes the following brief remarks.

In his Complaint and then again in his memorandum in response to summary judgment, the plaintiff seems to allege that after returning from his state court hearing he was examined by a nurse Howard, who is not a defendant in this case.  He contends

that she refused to examine him and then failed to document her encounter with him. (Pl. Aff. ¶ 17.)

It is rudimentary that the government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

"Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would

17

easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

The plaintiff, however, has essentially conceded his deliberate indifference claim to the extent he admits that he was "treated more adequately" when examined again on that same day at 8:00.  (Pl. Aff. ¶ 18.)  So by the plaintiff's own version of the facts, the defendants were not indifferent but rather expressly attentive.  Moreover, to the extent he still contends that the second examination on that same day was less than what is constitutionally required, he has made no effort to explain how it was deficient.  He has not alleged any treatment he needed but was denied.  And, as discussed already, the plaintiff has not created any genuine issues of fact as to his injuries, serious or otherwise.

### III.    Extension of Time

The plaintiff has been given an extension of time to file a supplement to his memorandum in opposition to summary judgment. [Doc. 55.] Out of an abundance of caution, the additional time was granted so that the plaintiff could review and submit argument related to certain SCDC policies, to which he previously had no access.  *Id*. The due date for his supplemental filing is January 27, 2009.  It appears now, however, that additional briefing concerning policies would not change the outcome of the case at this stage.  In the absence of evidence of any such policies, the Court is already

18

prepared to recommend that the restraint portion of his excessive force claim, relating to the black box and cuffs, should survive summary judgment.  It appears that most of the policies sought by the plaintiff relate to that issue.  [See Doc. 39, Ex. A.]  To the extent the policies might in some way relate to the take down, evidence of any relevant policies would not affect the Court's determination that he has failed to show more than a *de minimis* injury as a result of that incident.  Likewise, evidence of relevant policies would not renege the plaintiff's concession that he was examined after the May 8 incident by the defendants or cure his failure to allege any treatment which he was allegedly owed but denied.  Accordingly, evidence of policies would not save any medical deliberate indifference claim he may have intended.

The plaintiff, however, should still be permitted to review and copy the policies in the time prescribed by the Court.  [Doc. 55.] The plaintiff will be permitted to use the policies at the trial of this case, to the extent one is necessary.  The plaintiff has leave to submit the policies in making objections to this report and recommendation as well.

## **CONCLUSION**

Wherefore, it is RECOMMENDED that the defendants' Motion for Summary Judgment [Doc. 32] be GRANTED in part and DENIED in part.  Specifically, it is recommended that the motion be GRANTED as to the plaintiff's excessive force claim regarding the "take down" incident but DENIED as to the application of the black box and handcuff restraints.  It is further recommended that the motion be GRANTED as to the plaintiff's deliberate indifference to medical needs and due process claims, to the extent either or both are found to have been actually pled by the plaintiff.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 23, 2009
Greenville, South Carolina

**The plaintiff's attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).